# UNITED STATES DISTRICT COURT
## for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2201 E 24th Street<br>Winston-Salem, NC 27105 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:23MJ 183 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment (B)

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment (A)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1) | Distribution/Possession with intent to Distribute Controlled Substance |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Matthew La Valley
*Applicant's signature*

Matthew La Valley, ATF TFO
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 4/27/2023

_____
*Judge's signature*

City and state: Winston-Salem, North Carolina

United States Magistrate Judge Joi Elizabeth Peake
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Matthew La Valley, Task Force Officer, Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been for approximately three years, as well as a Police Officer with the Winston-Salem Police Department, and have been for approximately nine years. Your affiant has received local, state and federal training in the identification and investigation of narcotics. Furthermore, your affiant has made and assisted with more than 200 arrests for narcotic related violations at both the state and federal levels.

2. This affidavit is submitted in support of an application for a search warrant for the residence located at 2201 E 24th Street, Winston-Salem, North Carolina; and located within the Middle District of North Carolina.

3. This has been an ongoing investigation since January 2023. The information contained in this affidavit is based upon information provided by other ATF special agents, ATF task force officers, and other federal, state and local law enforcement officers, public source documents such as police reports, telephone toll analysis, physical surveillance and my own personal investigation. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause for a search warrant mentioned herein. As a result, it does not contain every

1

fact known to me concerning this investigation. Based upon all of the facts set out in the paragraphs below, I allege the following:

a.) that the target of this investigation is engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

b.) that the evidence sought through the use of a search warrant listed herein will provide investigators with evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of additional co-conspirators, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs; and,

c.) that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application, which is located within the Middle District of North Carolina.

4. Based upon my training and experience, as well as the other sources of information mentioned herein, I know the following:

a.) that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, pagers, scanners, cellular telephones and other instruments and papers relating to transportation, ordering, distribution, and sale of controlled substances. Further, that drug traffickers commonly "front" (provide on consignment) heroin and other controlled substances to their clients;

2

and that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, including on their persons. Cellular telephones and the telephones are of evidentiary value with respect to the identification of subjects who have not yet been positively identified;

b.) that it is common for large scale drug traffickers to secrete contraband proceeds of drug sales, and records of drug transactions, in secure locations within their residences, their automobiles, their businesses and/or on their persons for ready access and to conceal these records from law enforcements.

c.) that persons involved in large scale drug trafficking conceal within their residences and businesses large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to the obtaining, transferring, secreting, or spending of large sums of money obtained as a result of their participation in drug trafficking activities;

d.) that when drug traffickers amass large cash proceeds from the sale of drugs, the drug traffickers attempt to "legitimize" these profits. To accomplish this goal, drug traffickers utilize domestic banks and their attendant services, i.e., securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate and also shell transactions, and various business fronts to legitimize their profits made form narcotics trafficking;

e.) that drug traffickers maintain names, addresses or telephone numbers in books, ledgers, electronics storage devices or on papers which reflect the names, nicknames, code names, addresses, and/or the telephone numbers of their

3

criminal associates, and may be used to identify coconspirators who have not been identified or located;

f.)   that drug traffickers frequently take or cause to be taken photographs or other video images of themselves, their associates, their property, and other items of evidentiary value and that these traffickers usually maintain these photographs and video images in their possessions;

g.)   that the courts have recognized that unexplained wealth is probative of crimes motivated by greed, in particular, drug trafficking and money laundering;

h.)   that drug traffickers frequently maintain fictitious identification and other documents which are intended to conceal their identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance;

i.)   that drug traffickers frequently store and maintain paraphernalia used for the packaging, diluting, weighing and/or distribution of drugs inside their residence; including, but not limited to:  scales, plastic bags, diluting agents, tape, plastic wrap, and other items used to conceal drugs during transportation such as chemical and other odor-masking agents;

4

j.)   that individuals involved in the collection, accounting, packaging, transportation and laundering of drug proceeds often maintain paraphernalia used to perform these tasks, including, but not limited to money counting machines, plastic wrap, bulk quantities of rubber bands, and other items used to conceal drug proceeds such as chemical and other odor-masking agents;

k.)   that drug traffickers most generally have in their possessions, that is, on their persons, in their vehicles, in their residence and/or in their business, firearms, including but not limited to hand guns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure the drug traffickers' property and persons.  Such property may include, but not be limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and United States currency.

l.)   that drug traffickers often place assets in names other than their own to avoid the detection of these assets by government agencies;

m.)   that drug traffickers often place assets in corporate entities in order to avoid the detection of these assets by governmental agencies;

n.)   that even though these assets are in other persons' names, that drug traffickers continue to use these assets and exercise dominion and control over them;

o.)   that these assets are hidden in order to evade the payment of taxes on income and/or prevent forfeiture in event of prosecution;

5

p.) that large scale drug traffickers must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing narcotics business.

## CRIMINAL ACTIVITIES OF ORGANIZATION

5. The subject of this investigation is engaged in the offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). This investigation was initiated in January 2023, and has been ongoing to present. The investigation has thus far included the use of confidential sources, physical surveillance, controlled purchases, and telephone toll analysis. Among the goals of this investigation is to identify all members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs.

## FACTS ESTABLISHING PROBABLE CAUSE

6. During the month of January 2023, TFO La Valley utilized an ATF Confidential Informant (CI)1 who advised there was a subject known as "Shika" selling cocaine at 2201 E 24th Street, Winston-Salem, North Carolina. The CI was provided the phone number "854-888-1160" for "Shika".

7. A query of police databases also revealed BOYD to have a listed phone number of "854-888-1160", the same as provided by the CI. TFO La Valley conducted a query of BOYD through CJLeads and located BOYD having a North

---

1 The CI is a previously convicted felon and was cooperating seeking a finding of substantial assistance for pending felony charges

6

Carolina ID card, number 10031218. Her listed address on her ID card shows to be 2201 E 24th Street, Winston-Salem, NC.

8.      On February 9th, 2023, TFO La Valley and TFO Van Kuren met with the ATF CI in a pre-determined location and directed the CI to go to 2201 E 24th Street, Winston-Salem NC to meet with BOYD and purchase twenty-one (21) grams of "crack" cocaine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the "crack" cocaine.

9.      Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with not being found. The CI also received a video/audio recording device to capture any interaction the CI has with subjects at the aforementioned location.

10.      Once assisting officers were in the area of 2201 E 24th Street, Winston-Salem, NC to conduct surveillance, TFO La Valley and TFO Van Kuren instructed the ATF CI to respond to 2201 E 24th Street, Winston-Salem, NC.

11.      As the CI arrived at 2201 E 24th Street, BOYD was observed exiting the front door of the residence and made contact with the CI. The two conversed briefly during which time BOYD was provided nine hundred eighty dollars ($980.00) of Agent Cashier Funds in exchange for approximately 23.7 grams of "crack" cocaine.

12.      The CI left the area and began driving to a pre-determined location with TFO La Valley and TFO La Valley following the CI. The CI arrived at the pre-determined location and the purchased "crack" cocaine was seized. The CI

7

and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The video/audio recording device was also recovered from the CI.

13.     The suspected "crack" cocaine was weighed and was determined to be approximately 23.7 grams. A field test of the substance was conducted and showed a positive indication for the presence of cocaine.

14.     On February 27th, 2023, TFO La Valley and TFO Van Kuren met with the ATF CI in a pre-determined location and directed the CI to respond to 2201 E 24th Street, Winston-Salem NC to meet with BOYD and purchase 28 grams of "crack" cocaine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the "crack" cocaine.

15.     Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with not being found. The CI also received a video/audio recording device to capture any interaction the CI has with subjects at the aforementioned location.

16.     Once assisting officers were in the area of 2201 E 24th Street, Winston-Salem, NC to conduct surveillance, TFO La Valley directed the CI to respond to 2201 E 24th Street and purchase 28 grams of cocaine from BOYD. While enroute to the area of 2201 E 24th Street, the CI sent a text to BOYD informing her the CI was on the way. The number the CI text BOYD at was 854-888-1160. TFO La Valley and VanKuren then drove the CI to the area of 2201 E 24th Street at which time the CI exited the vehicle and walked toward 2201 E 24th Street.

8

17.     As the CI arrived at 2201 E 24th Street, BOYD was in the doorway at the front of the residence and allowed the CI into the home. While in the residence, BOYD retrieved the "crack" cocaine from a black in color safe that was on the kitchen table, which she then provided the CI for the one thousand two hundred dollars ($1,200.00) of Agent Cashier Funds.

18.     The CI left the area and was picked up by TFO La Valley and TFO Van Kuren. Once inside the vehicle, the purchased "Crack" cocaine was seized by TFO Van Kuren and the video/audio recording device was also recovered from the CI. TFO La Valley drove to a pre-determined location. Upon arrival at the pre-determined location the CI was searched by TFO La Valley for contraband with negative results.

19.     The suspected "crack" cocaine was weighed and was determined to be approximately 21.17 grams as opposed to the 28 grams requested. A field test of the substance was conducted and showed a positive indication for the presence of cocaine. Due to the weight being 21.17 grams, TFO La Valley instructed the CI to contact BOYD regarding the additional seven (7) grams of cocaine. BOYD informed the CI she had provided the CI the wrong bag of cocaine.

20.     On March 7th, 2023, TFO La Valley and TFO Van Kuren met with the ATF CI in a pre-determined location and directed the CI to respond to 2201 E 24th Street, Winston-Salem NC to meet with BOYD and purchase 28 grams of "crack" cocaine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the "crack" cocaine.

9

21. Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The CI also received a video/audio recording device to capture any interaction the CI has with subjects at the aforementioned location.

22. Once assisting officers were in the area of 2201 E 24th Street, Winston-Salem, NC to conduct surveillance, TFO La Valley directed the CI to respond to 2201 E 24th Street and purchase 28 grams of cocaine from BOYD. TFO La Valley and VanKuren then drove the CI to the area of 2201 E 24th Street at which time the CI exited the vehicle and walked toward 2201 E 24th Street.

23. After the CI arrived at 2201 E 24th Street, BOYD allowed the CI into the home. While inside the residence, BOYD sold the CI "crack cocaine" for the one thousand two hundred dollars ($1,200.00) of Agent Cashier Funds. During the transaction BOYD acknowledged that she still owed the CI additional narcotics, and that she would inform the CI when she has same.

24. The CI left the area and was picked up by TFO La Valley and TFO Van Kuren. Once inside the vehicle, the purchased "Crack" cocaine was seized by TFO Van Kuren and the video/audio recording device was also recovered from the CI. TFO La Valley drove to a pre-determined location. Upon arrival at the pre-determined location the CI was searched by TFO La Valley for contraband with negative results.

10

25.     The suspected "crack" cocaine was weighed and was determined to be approximately 28.53 grams. A field test of the substance was conducted and showed a positive indication for the presence of cocaine.

26.     On March 22nd, 2023, TFO La Valley and TFO Van Kuren met with the ATF CI in a pre-determined location and directed the CI to respond to 2201 E 24th Street, Winston-Salem NC to meet with BOYD and purchase 21 grams of "crack" cocaine and obtain the additional 7 grams that BOYD owed the CI. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the "crack" cocaine.

27.     Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The CI also received a video/audio recording device to capture any interaction the CI has with subjects at the aforementioned location.

28.     Once assisting officers were in the area of 2201 E 24th Street, Winston-Salem, NC to conduct surveillance, TFO La Valley directed the CI to respond to 2201 E 24th Street and complete the transaction. TFO La Valley and VanKuren then drove the CI to the area of 2201 E 24th Street at which time the CI exited the vehicle and walked toward 2201 E 24th Street.

29.     After the CI arrived at 2201 E 24th Street, BOYD allowed the CI into the home. While inside the residence, BOYD sold the CI two separate bags of cocaine, one containing "crack" cocaine and one containing powder cocaine, for the nine hundred dollars ($900.00) of Agent Cashier Funds.

11

30. The CI left the area and was picked up by TFO La Valley and TFO Van Kuren. Once inside the vehicle, the purchased "Crack" cocaine and powder cocaine was seized by TFO Van Kuren and the video/audio recording device was also recovered from the CI. TFO La Valley drove to a pre-determined location. Upon arrival at the pre-determined location the CI was searched by TFO La Valley for contraband with negative results.

31. The suspected "crack" cocaine was weighed and was determined to be approximately 14.975 grams and powder cocaine was weighed and was determined to be approximately 14.455 grams. A field test of the substances in both bags was conducted and both showed a positive indication for the presence of cocaine.

32. On April 3, 2023, TFO La Valley was contacted by the ATF CI. The CI advised they had made contact with BOYD and another individual regarding the CI being able to meet the source of supply for cocaine. TFO La Valley instructed the CI to arrange a one-ounce purchase of cocaine with BOYD for April 11, 2023, in which the CI would be able to meet the source of supply. The CI advised they would do same. The CI would later contact TFO La Valley and advised the transaction was arranged for April 11, 2023.

33. On April 11, 2023, ATF personnel conducted an undercover operation, in which the ATF CI purchased approximately 32.28 grams of an unknown substance from Nashica BOYD (previously identified) at 2201 E 24th Street, Winston Salem, NC.

12

34.     TFO La Valley and ATF SA Carpenter met with the CI and searched their person, during which no contraband was located. The CI was provided one thousand two hundred dollars ($1,200.00) of ATF Agent Cashier Funds.

35.     TFO La Valley directed the CI to respond to 2201 E 24th Street and purchase 28 grams of cocaine from BOYD. TFO La Valley and SA Carpenter then drove the CI to the area of 2201 E 24th Street at which time the CI exited the vehicle and walked toward 2201 E 24th Street.

36.     The CI arrived at 2201 E 24th Street, Winston Salem, NC and contacted BOYD by cell phone. BOYD advised she was not home but that she would then respond back to her residence.

37.     A short time later BOYD arrived in an unknown dark in color passenger vehicle. The CI and BOYD entered the residence at which point the CI provided BOYD with one thousand two hundred dollars ($1,200.00) of Agent Cashier Funds and BOYD provided the CI a baggie containing an unknown rock like substance. The CI then departed 2201 E 24th Street, Winston Salem, NC and was picked up by TFO La Valley and SA Carpenter. TFO La Valley was provided the suspected narcotics that was purchased from BOYD.

38.     TFO La Valley examined the suspected narcotics and believed the substance to be counterfeit based on its appearance. TFO La Valley instructed the CI to call BOYD and to ask her what the substance in the bag was, however, it became apparent BOYD had blocked the CI's phone number as the calls were immediately being rejected.

13

39.     Following the operation, the CI was again searched with negative result for any contraband.

40.     The unknown substance was weighed and was determined to be approximately 32.28 grams. A field test of the substances was conducted however, it did not show a positive indication for cocaine and the test was inconclusive.

## CONCLUSION

41.   It is believed that the facts alleged herein establish the following:

a.)   that the target of this investigation is engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute Cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code 841(b)(1)(c) and the distribution and possession with intent to distribute "crack" cocaine, in violation of Title 21, United States Code, Section 841(a)(1)

b.)   investigators with admissible evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs, firearms; and,

c.)   that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application which is located within the Middle District of North Carolina.

14

/S/ Matthew La Valley
Matthew La Valley
Task Force Officer
Alcohol, Tobacco, Firearms and Explosives

On this day, April 27, 2023, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath,.and attested to the contents of this affidavit for application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.


JOI ELIZABETH PEAKE
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA

15

## ATTACHMENT A

## Items to be seized

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, namely, violations of Title 21, United States Code, Section 841(a)(1), in the form of the following:

a.) books, records, receipts, notes, ledgers, airline tickets, money orders, pagers, scanners, a cellular telephone with number 854-888-1160, and other instruments and papers relating to transportation, ordering, distribution, and sale of controlled substances;

b.) contraband proceeds of drug sales including official government funds used to make controlled purchases and records of drug transactions;

c.) currency, financial instruments, precious metals, jewelry, and other items of value representing proceeds of drug transactions;

d.) securities, cashier's checks, money drafts, wire transfers, letters of credit, bank statements, real estate documents;

e.) names, addresses or telephone numbers in books, ledgers, electronics storage devices or on papers which reflect the names, nicknames, code names, addresses, and/or the telephone numbers of criminal associates;

f.) photographs or other video images depicting drug related activity or possession of firearms;

g) paraphernalia used for the packaging, diluting, weighing and/or distribution of drugs, including, but not limited to: scales, plastic bags, diluting agents, tape, plastic wrap, and other items used to conceal drugs during transportation such as chemical and other odor-masking agents;

h.) paraphernalia used to count and package currency, including, but not limited to money counting machines, plastic wrap, bulk quantities of rubber bands, and other items used to conceal drug proceeds such as chemical and other odor-masking agents;

i.)   firearms, ammunition, and firearms accessories.

j.)   controlled substances, to include but not limited to methamphetamine, cocaine and "crack" cocaine.

k.) any indicia of ownership or occupancy of the premises to be searched.

Case 1:23-mj-00183-JEP   Document 1   Filed 04/27/23   Page 18 of 19

## Attachment B

The entire premises, including any outbuildings, located at 2201 E 24th Street, Winston-Salem, NC 27105. The residence is described as a one-story single-family residence with a front porch. The residence is on the north side of E 24th Street with the front of the residence facing south. The numbers "2201" are located on the support beam to the front porch next the front steps.

